ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 1 2 2006
CLERK, U.S. DISTRICT COURT
By _____
Deputy

MARK WOODALL,
MICHAEL P. MCMAHON,
PAUL J. MADSON,
Individually and on behalf of a class of all
similarly situated persons,

        Plaintiffs,

v.

AMERICAN AIRLINES, INC.,

        Defendant.

Civil Action No. 3:06-CV-0072-M
Judge Barbara M.G. Lynn

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR DISMISSAL OF
PLAINTIFFS' COMPLAINT, AND, ALTERNATIVELY, TO STRIKE

Respectfully submitted,
WAN J. KIM
Assistant Attorney General
Civil Rights Division

DAVID J. PALMER, Chief (DC Bar No. 417834)
Christine M. Roth, Deputy Chief (DC Bar No. 464815)
John P. Cunningham, Trial Attorney (VA Bar No. 43973)
Esther G. Tamburo, Trial Attorney (DC Bar No. 461316)
Andrew Braniff, Trial Attorney (IN Bar No. 23430-71)
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, NW
Patrick Henry Building, Room 4036
Washington, DC 20530
Telephone: (202) 514-3831
Facsimile: (202) 514-1005

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

PAGE

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    Trip Bidding While On Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    Vacation And Sick Leave Accrual While On Leave . . . . . . . . . . . . . . . . . . . . . . 5

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.    Plaintiffs Have Stated A Cognizable Claim Under USERRA Challenging
            Defendants's Trip Bidding Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.    Plaintiffs' Complaint clearly asserts a claim for monetary compensation
                  resulting from past injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            2.    A live controversy exists regarding the 2003 CBA trip
                  bidding process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C.    Plaintiffs Have Stated A Cognizable Claim Under USERRA Challenging
            Defendant's Leave Accrual Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      D.    American's Collective Bargaining/Railway Labor Act
            Arguments Are Irrelevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      E.    American's Motion To Strike Allegations Related To The 2003 CBA
            Should Be Denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

**CASES**                                                                                 **PAGE(S)**

*Accardi v. Pennsylvania R.R. Co.*, 383 U.S. 225 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

*Aeronautical Indus. Dist. Lodge 727 v. Campbell*, 337 U.S. 521 (1949) . . . . . . . . . . . . . . . . . 18

*Augustus v. B. of Pub. Instruction of Escambia County, Fl.,*
306 F.2d 862 (5th Cir. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 20, 21

*Barber v. Motor Vessel "Blue Cat,"* 372 F.2d 626 (5th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . 7

*Carney v. Cummins Engine Co., Inc.,* 602 F.2d 763 (7th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . 15

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984) . . . . . . . . . . . . . 13

*Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341  (2nd Cir. 1973) . . . . . . . . . 10

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Coyne v. Westinghouse Elec. Corp.*, 204 F. Supp. 403 (S.D. Cal. 1962) . . . . . . . . . . . . . . . . . . 18

*Donovan v. Grantham,* 690 F.2d 453 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Eagar v. Magma Copper Co.,* 389 U.S. 323 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Fed. Deposit Ins. Corp. v. Niblo*, 821 F. Supp. 441 (N.D. Tex. 1993) . . . . . . . . . . . . . . . . . . 8, 20

*Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275 (1946) . . . . . . . . . . . . . . . . . . 18, 20

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re  Electronic Data Sys. Corp."ERISA" Litigation,*  305 F. Supp.2d 658
(E.D. Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045
(5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lowery v. Texas A & M Univ. Sys.,* 117 F.3d 242 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 8

**TABLE OF AUTHORITIES (continued)**

**CASES**                                                                        **PAGE(S)**

*Mann v. Adams Realty Co., Inc.*, 556 F.2d 288 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . .  10, 17

*Mills v. Injury Benefits Plan of Schepps-Foremost, Inc.,* 851 F. Supp. 804
(N.D. Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 11, 12

*OKC Corp. v. Williams,* 461 F. Supp. 540 (N.D. Tex. 1978) . . . . . . . . . . . . . . . . . . . . . . . . .  4, 20

*Reich v. Tiller Helicopter Servs.,* 8 F.3d 1018 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . .  10

*Rogers v. City of San Antonio,* 392 F.3d 758 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . .  *passim*

*Scheuer v. Rhodes,* 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Simmang v. Texas Bd. Of Law Examiners,* 346 F. Supp.2d 874 (W.D. Tex. 2004) . . . . . . . . . .  11

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 12, 21

*U.S. ex. rel. Mathews v. Healthsouth Corp.*, 54 Fed. Appx. 404, 2002 WL 31687686
(5th Cir. Oct. 22, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Waltermyer v. Aluminum Co. of America,* 804 F.2d 821 (3d Cir. 1986) . . . . . . . . . . .  3, 15, 16, 19


**STATUTES**                                                                     **PAGE(S)**

Fair Labor Standards Act, 29 U.S.C. 201, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §
4301, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

38 U.S.C. § 4301(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

38 U.S.C. § 4301(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

38 U.S.C. § 4302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 17, 19

**TABLE OF AUTHORITIES (continued)**

**STATUTES**                                                                    **PAGE(S)**

38 U.S.C. § 4302(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

38 U.S.C. § 4316 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

38 U.S.C. § 4316(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13


**REGULATIONS**                                                                 **PAGE(S)**

C.F.R. part 1002 (commentary at 70 Fed. Reg 75263) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

20 C.F.R. § 1002.150(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*


**RULES**                                                                       **PAGE(S)**

Fed. R. Civ. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 21

Fed. R. Civ. P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 17

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 11, 12

Fed. R. Civ. P. 12(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 8, 20, 21

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Fed. R. Civ. P. 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARK WOODALL,
MICHAEL P. MCMAHON,
PAUL J. MADSON,
Individually and on behalf of a class of all
similarly situated persons,

        Plaintiffs,

v.

AMERICAN AIRLINES, INC.,

        Defendant.

Civil Action No. 3:06-CV-0072-M
Judge Barbara M.G. Lynn

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR DISMISSAL OF
PLAINTIFFS' COMPLAINT, AND, ALTERNATIVELY, TO STRIKE

I.    INTRODUCTION

Plaintiffs are military pilots who are or were employed by defendant American Airlines,

Inc. ("defendant" or "American"). *See* Plaintiffs' Complaint ("Comp.") ¶¶ 33-38. They bring

this action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and others similarly situated.

Plaintiffs' complaint alleges that American has violated the Uniformed Services Employment

and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq.,* by denying them certain

benefits of employment while on military leave that it provides to pilots on comparable forms of

non-military leave. *See* Comp. ¶¶ 8-14. Specifically, plaintiffs allege that, while on military

leave, they have not been permitted to bid on flights on the same basis as pilots who take

comparable non-military leave. *See id.* ¶¶ 9-10, 14. In addition, plaintiffs allege that, while on

military leave, they have been denied accrual of sick and vacation time even though pilots on

comparable non-military leave continue to accrue these benefits. *See id.* ¶¶ 9-14. Both claims

are cognizable under USERRA because the law requires that employees on military leave receive

"*the most favorable treatment accorded to any comparable form of leave . . . .*" 20 C.F.R.

§ 1002.150(b) (emphasis added).

Nonetheless, American asks this Court to dismiss both claims on the pleadings.
American contends that plaintiffs' trip bidding claim must be dismissed because the USERRA
violation about which plaintiffs complain was corrected in the 2003 collective bargaining
agreement ("CBA"). *See* American Airlines, Inc.'s Brief in Support of Its Motion for Dismissal
of Plaintiffs' Complaint, and, Alternatively, to Strike ("Def's br.") at 13-15. Therefore,
American argues, plaintiffs cannot recover a prospective injunction. *See id.* However, American
conveniently ignores paragraph 41 of plaintiffs' complaint, which unambiguously seeks
monetary compensation for American's past trip bidding USERRA violations in addition to
prospective relief. *See* Comp. ¶ 41. But, more importantly, dismissal at this stage is entirely
inappropriate because mere reference to the language of the 2003 CBA does not resolve
numerous factual issues such as, for example, how the trip bidding process is being practically
implemented and whether the implementation complies with USERRA.

American also argues that plaintiffs' leave accrual claim must be dismissed because the
CBA *deems* military leave a "Leave of Absence," for which no employee accrues vacation or sick
time. *See* Def's br. at 16-25. American insists that the CBA can define how military leave is
treated without regard to USERRA, and without regard to whether the military leave in question is
actually more comparable to jury duty, paid sick leave, union duty leave, or other forms of non-
military leave with more favorable benefits. *See id.* However, in making this argument,

2

American overlooks a mountain of authority, directly on point, holding that the parties to a CBA *are not* free to negotiate those leaves considered comparable to military leave for purposes of USERRA or its predecessor statutes. *See, e.g., Waltermyer v. Aluminum Co. of America,* 804 F.2d 821, 824-25 (3d Cir. 1986) (collecting cases); *see also Rogers v. City of San Antonio,* 392 F.3d 758, 764-72 (5th Cir. 2004); 20 C.F.R. § 1002.150(b); 38 U.S.C. § 4302(b).

For example, American fails to distinguish *Rogers v. City of San Antonio* where, under virtually identical facts, the Fifth Circuit reversed summary judgment for the defendant, holding that comparability for purposes of USERRA presents a genuine dispute of material fact *regardless* of how the CBA characterizes military leave. *See* 392 F.3d at 760, 771-72. In other words, the Fifth Circuit *has already rejected* the very argument that American now makes. In addition, American ignores USERRA's implementing regulations, which set forth a number of factors that should be considered when comparing leaves under USERRA, including "the duration of the absences . . . the purpose of the leave and the ability of the employee to choose when to take the leave." 20 C.F.R. § 1002.150(b). American also avoids mentioning USERRA section 4302, which plainly states that USERRA supercedes any "contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by [USERRA] . . . ." 38 U.S.C. § 4302(b).

Apparently seeking to avoid the vast weight of authority adverse to its position, American instead focuses on irrelevant and immaterial case law regarding labor policy, seniority systems, and the Railway Labor Act ("RLA"). *See* Def's br. at 15-24. However, as noted above, the principal issue to be decided here is what forms of non-military leave offered by American are comparable to plaintiffs' military leave. This case is not about whether USERRA preempts the

3

RLA, or the interplay between two federal laws. Defendant's exhaustive discussion of this topic is a classic red herring and amounts to nothing more than a "smoke and mirrors" attempt to obfuscate the central issue in dispute.

Finally, American moves to strike references in plaintiffs' complaint to the 2003 CBA. But again, American fails to cite or even reference the controlling legal standard in this Circuit under Fed. R. Civ. P. 12(f). Within the Fifth Circuit, motions to strike are rarely granted, and only upon a showing that the pleading to be struck (i) "bears no possible relation to the controversy;" or (ii) "may cause the objecting party prejudice." *OKC Corp. v. Williams,* 461 F. Supp. 540, 550 (N.D. Tex. 1978). Here, defendant has not made either showing. Accordingly, no basis exists to strike any portion of plaintiffs' pleading.

For all of these reasons, and as explained in detail below, American's motion should be denied.

II.    STATEMENT OF FACTS

The collective bargaining agreements between American and the Airline Pilots in Service of American Airlines, as represented by the Airline Pilots Association, dated May 5, 1997 ("1997 CBA") and May 1, 2003 ("2003 CBA") set forth the terms of employment negotiated between American and its pilots (collectively, the "CBAs").[1] Pursuant to the CBAs, there are generally two different types of leave available to pilots: (i) leave with pay and benefits; and (ii) "Leaves of Absence," with no pay or benefits.[2] In both CBAs, American categorizes pilots on military leave

---

[1]*See* 1997 CBA § 1.A-D; 2003 CBA Preamble-1 (attached to Def's br. at App. 309-708). The 1997 and 2003 CBAs are attached to defendant's brief in the Appendix.

[2]*See* Def's br. at 9-10; *see also* 1997 CBA §§ 5A.1-4, 9.E, 9.H, 11.A, 11.D & 11.E, & Supp. R; 2003 CBA §§ 5.A.1-4, 9.H, 9.J, 11.A, 11.E.1-11 & 11.F.

as pilots on "Leaves of Absence," with no pay and no benefits.[3] As a result, plaintiffs allege that pilots on military leave are treated less favorably than individuals on comparable forms of non-military leave, particularly with regard to equivalent trip bidding rights and vacation and sick time accrual. *See, e.g.,* Comp. ¶¶ 9-14.

A.     Trip Bidding While On Leave

Plaintiffs' complaint alleges that the 1997 and 2003 CBAs place restrictions on a military pilot's ability to bid on flights, and that no similar restrictions are placed on pilots taking comparable non-military leave. *See* Comp. ¶¶ 9-10, 14. For instance, the 1997 CBA permits a pilot on military leave to place bids for flight schedules only upon his or her return to American from active duty, even where the pilot might know his or her release date days or weeks in advance.[4] Likewise, under the 2003 CBA, a "current and qualified" pilot on military leave is permitted to bid on flights only if he or she is available to fly on the first day of the next contractual month, thereby effectively preventing pilots who are released from duty any time after the first day of the month from bidding on flights for that month.[5] The 2003 CBA does not place similar restrictions on pilots out for jury duty, paid sick leave, and other comparable forms of non-military leave.[6]

B.     Vacation And Sick Leave Accrual While On Leave

Both the 1997 and 2003 CBAs provide less favorable leave accrual benefits to pilots on

---

[3]*See* 1997 CBA §§ 11.A & D & Supp. R; 2003 CBA §§ 11.A & E.1-11.

[4]*See* 1997 CBA Supp. R.E & Supp. R.F.2.

[5]*See* 2003 CBA §§ 11.C & E.11.2.

[6]*See, e.g.* 1997 CBA §§ 5, 9 & 10; 2003 CBA §§ 5, 9 & 10.

military leave than pilots on comparable non-military leave. For example, the CBAs state that pilots whose leave exceeds 60 days during a calendar year are subject to a one tenth reduction in vacation allowance for each 30 days of leave taken.[7] While the CBAs exempt from the vacation deduction procedure workplace injury leave, paid sick leave, and union duty leave, the CBAs do not exempt military leave.[8]

Furthermore, both CBAs grant full employment benefits to pilots on certain forms of leave, which are not granted to pilots on military leave. For example, the pay and credit provisions of the 1997 and 2003 CBAs apply to pilots on paid sick leave, training program leave, vacation leave and leave to serve jury duty.[9] The CBAs do not provide that the pay and credit provisions apply to pilots on military leave.[10] As a result, pilots on jury duty, paid sick leave, vacation leave, and training leave continue to accrue benefits that are denied to pilots on military leave such as, for example, accrual of vacation and sick time.[11]

The CBAs also specifically state that pilots who return from military leave only begin to accrue vacation upon the date of return.[12] When read in conjunction with other provisions of the

----

[7]*See* 1997 CBA § 9.E; 2003 CBA § 9.H.

[8]*See id.*

[9]*See* 1997 CBA §§ 5.A.1-4 ; 2003 CBA §§ 5.A.1-4. Pilots on military leave may currently reschedule vacation days, with several strict limitations, to cover their military duty leave time, and only then would they be able to continue to receive pay and benefits comparable to individuals on other types of leave, *e.g.*, jury duty. *See* 1997 CBA Supp. R.B.1-3; 2003 CBA §§ 11.E.7.a-d.

[10]*See id.*

[11]*See id.; see also* 1997 CBA §§ 11.A & D & Supp. R; 2003 CBA §§ 11.A & E.1-11.

[12]*See* 1997 CBA 9.H; 2003 CBA § 9.J.

CBAs, this means that no vacation accrual occurs while pilots are on military leave.[13]  The CBAs contain no similar restriction with regard to other forms of leave, such as jury duty.[14]  Likewise, because pilots on military leave are defined as pilots on "Leaves of Absence," the CBA operates to deny leave accrual to those military pilots whose service falls between 15 and 30 days.[15]  Pilots on comparable non-military leave for short durations continue to accrue vacation time.[16]

Finally, these allegations represent an on-going concern.  Pilot Madson specifically alleges that the 2003 CBA still limits his ability to accrue sick leave while on military leave.  *See* Comp. ¶¶ 29-31.  Furthermore, because the 2003 CBA defines all pilots on military leave as on "Leave of Absence," the contract continues to limit his and all current pilots' abilities to accrue certain employment benefits, such as paid sick leave and vacation leave, while allowing such accrual for pilots on comparable non-military leave.  *See* Comp.  ¶¶ 9-14.

III.   ARGUMENT

A.   Standard Of Review

"[T]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982) (quoting Wright & Miller); *see also Barber v. Motor Vessel "Blue Cat,"* 372 F.2d 626, 627 (5th Cir. 1967) (dismissing a claim "on the basis of the barebone pleadings is a

---

[13]*See, e.g.,* 1997 CBA §§ 5.A.1-4 & 2003 CBA §§ 5.A.1-4.

[14]*See id.*

[15]*See id.; see also* 1997 CBA §§ 2.F, 5.A.1-4 & 9.A.3 & Supp. R.C.1-2 & 2003 CBA §§ 2.I, 5.A.1-4 & 9.B.2.

[16]*See id.*

precarious one with a high mortality rate."). When reviewing the sufficiency of a complaint

before receiving any evidence, the district court's task is a limited one. *See Scheuer v. Rhodes,*

416 U.S. 232, 236 (1974) (overruled on other grounds). The issue is not whether plaintiffs will

ultimately prevail on their claims, but rather whether they are entitled simply to offer evidence to

support them. *See id.* For this reason, when considering a motion to dismiss under Rule 12(b)(6),

all allegations in the complaint must be construed favorably to the pleader, and the Court must

accept as true all facts alleged. *See Lowery v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th

Cir. 1997). Dismissal is improper unless the defendant can prove that no set of facts would entitle

plaintiffs to relief. *See Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 524 (5th Cir. 1994).

Similar to the 12(b)(6) motion, motions to strike pursuant to Rule 12(f) are disfavored.

These motions are granted only upon a showing of prejudice and "'when the pleading to be

stricken has no possible relation to the controversy.'" *Augustus v. B. of Pub. Instruction of*

*Escambia County, Fl.,* 306 F.2d 862, 868 (5th Cir. 1962) (citations omitted); *see also Fed.*

*Deposit Ins. Corp. v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993) ("In order to succeed on a

motion to strike . . . it must be shown that the allegations being challenged are so unrelated to [the

claims] as to be unworthy of any consideration . . . and that their presence in the pleading

throughout the proceeding will be prejudicial to the moving party.").

Under these highly deferential standards, it is clear that defendant's motion must be

denied.

B.    Plaintiffs Have Stated A Cognizable Claim Under USERRA Challenging
      Defendants's Trip Bidding Procedures

Under USERRA, employees on military leave must receive from their employers the most

8

favorable treatment accorded any comparable form of leave. *See Rogers*, 392 F.3d at 771-72; 20

C.F.R. § 1002.150(b). Plaintiffs allege in their complaint that the 1997 and 2003 CBAs deny

military pilots the ability to bid on flight schedules on the same basis as pilots on other forms of

leave. *See* Comp. ¶¶ 9-10 ("Pursuant to the 1997 and 2003 Collective Bargaining Agreements . . .

American Airlines has allowed pilots who are 'in service' [but have otherwise taken non-military

leave] to bid on flight schedules for the upcoming month . . . . Pilots . . . considered . . . on

[military leave] may not bid for flight schedules.").

American asserts that plaintiffs' trip bidding claim must be dismissed because, according

to American, the 2003 CBA has eradicated the alleged USERRA violation. As such, the

Company argues, "Plaintiffs do not have standing to litigate, and would not benefit from, their

prospective claim for injunctive relief." Def's br. at 14. American's position is untenable. As an

initial matter, defendant's assertion that plaintiffs seek only prospective injunctive relief is simply

wrong. The complaint unambiguously asserts that plaintiffs are entitled to *monetary*

*compensation* for American's trip bidding USERRA violations, not solely a forward-looking

injunction. *See* Comp. ¶ 41. But, even if plaintiffs had sought only prospective non-monetary

injunctive relief, a plain reading of the 2003 CBA demonstrates that a live controversy still exists

regarding whether American's current trip bidding process violates USERRA.

       1.    <u>Plaintiffs' Complaint clearly asserts a claim for monetary compensation<br>resulting from past injury</u>

In American's haste to dismiss the *entire* trip bidding claim, the Company either

overlooked or ignored paragraph 41 of plaintiffs' complaint, which clearly seeks wrongfully

denied monetary compensation resulting from American's alleged trip-bidding USERRA

violations. *See* Comp. ¶ 41. Specifically, in the "prayer for relief," paragraph 41, plaintiffs ask

the Court to:

> Require that American Airlines fully comply with the provisions of
> USERRA by providing Plaintiffs and class members all employment
> benefits denied them as a result of the unlawful acts and practices
> under USERRA described herein, *including, but not limited to . . . pay*
> *lost due to the inability to bid on flights commensurate with their*
> *levels of seniority.*" (emphasis added).

While discovery will be necessary to determine the precise amount of damages plaintiffs

seek, under the notice pleading standard applicable to federal court actions, paragraph 41 clearly

states a cognizable claim for monetary relief. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506,

512 (2002) ("[The] complaint must include only 'a short and plain statement of the claim showing

that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)).[17] And, as American

concedes, a claim for monetary relief necessarily defeats its motion to dismiss the trip bidding

claim. *See* Def's br. at 15 n.12 (acknowledging that if plaintiffs' complaint had alleged

entitlement to damages for past injuries, defendant would have to respond to the trip bidding

claim on the merits). Accordingly, by American's own admission, its motion for dismissal must

be denied.[18]

---

[17]*See also Mann v. Adams Realty Co., Inc.*, 556 F.2d 288, 293 (5th Cir. 1977) ("The
plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain
statement of the claim is sufficient . . . ."); *Mills v. Injury Benefits Plan of Schepps-Foremost,
Inc.*, 851 F. Supp. 804, 806 (N.D. Tex. 1993) ("A complaint need only recite a short and plain
statement of the claim showing that the pleader is entitled to relief.").

[18]Moreover, even if plaintiffs had sought only an injunction, recovery of back wages in
employment cases has long been considered a form of equitable/injunctive relief. For example,
under the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*, it is well settled that courts may issue
restitutionary injunctions to enjoin the unlawful withholding of back wages. *See, e.g., Reich v.
Tiller Helicopter Servs.*, 8 F.3d 1018, 1030 (5th Cir. 1993); *Donovan v. Grantham*, 690 F.2d
453, 456-57 (5th Cir. 1982); *cf. Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d

2.    A live controversy exists regarding the 2003 CBA trip bidding process

Even if plaintiffs had no claim for past damages, a live controversy still exists regarding

whether the trip bidding process under the 2003 CBA complies with USERRA. Defendant

dedicates four full pages of its brief to attempting to explain the pilot trip bidding process. *See*

Def's br. at 5-9. However, far from clarifying the process, defendant's recitation simply

reinforces plaintiffs' position that reference to the 2003 CBA alone is insufficient to determine

whether defendant's current trip bidding process violates USERRA. In other words, before

plaintiffs are forced to respond to a dispositive motion, they are entitled to discovery regarding,

among other things, how the CBA's 2003 trip bidding language is being practically interpreted

and applied to pilots on military leave, as well as pilots on comparable forms of non-military

leave. *See, e.g., U.S. ex. rel. Mathews v. Healthsouth Corp.*, 54 Fed. Appx. 404, 2002 WL

31687686, at \*2 (5th Cir. Oct. 22, 2003) (Rule 12(b)(6) dismissal inappropriate where discovery

could turn up evidence substantiating allegations); *Mills*, 851 F. Supp. at 806 ("Rule 8(a) does not

require factual pleading; plaintiffs may proffer general pleadings and defendants may discover the

precise factual basis for the claims through liberal pretrial discovery procedures.").[19]

---

341, 390-91 (2nd Cir. 1973) (court may allow ancillary equitable relief, including restitution, where it is necessary to effectuate the statutory purpose). Moreover, the Fifth Circuit has held that back pay relief under Title VII is compatible with an injunctive class action brought pursuant to Fed. R. Civ. P. 23(b)(2). *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 418 (5th Cir. 2004).

[19]*See also Simmang v. Texas Bd. of Law Examiners*, 346 F. Supp.2d 874, 885 (W.D. Tex. 2004) (denying Rule 12(b)(6) motion to dismiss because factual issues exist that necessitate discovery); *In re Electronic Data Sys. Corp. "ERISA" Litigation*, 305 F. Supp.2d 658, 670 (E.D. Tex. 2004) (rejecting 12(b)(6) motion to dismiss at "early juncture" in litigation where discovery would assist in establishing the status, treatment, and interpretation of employee stock option plan).

Moreover, American misleadingly claims that "the plain language of the 2003 CBA []

permits pilots on military leave to participate in the bidding process even if they are not active

with American at the time they submit a bid." Def's br. at 14. American does not reveal that the

2003 CBA also states pilots on military leave are only eligible to bid on a trip if they are

"available on the first day of the next contractual month . . . . " *Id.* In other words, a veteran who

knows he or she will be unavailable to fly on the first day of the next contractual month would be

ineligible to bid on flights despite being available to fly for a substantial portion of that month.

Again, defendant does not attempt to explain or address this restriction, nor does it discuss

whether such a restriction is imposed on pilots who take comparable forms of non-military

leave.[20]

In sum, it is impossible to conclude, as defendant urges, that changes in the 2003 CBA

render plaintiffs' trip bidding claim moot. At a minimum, plaintiffs are entitled to discovery to

determine how the trip bidding process is being interpreted and applied under the 2003 CBA, and

whether pilots on military leave are subject to the same restrictions as pilots who take comparable

forms of non-military leave. These factual issues cannot be resolved on a motion to dismiss. *See*

*Swierkiewicz*, 534 U.S. at 512-13 (explaining that liberal discovery provisions, rather than

motions to dismiss, should be used to define disputed facts and issues); *Conley v. Gibson*, 355

U.S. 41, 45-46 (1957) (counseling that a complaint should not be dismissed under Rule 12(b)(6)

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

---

[20]American also obfuscates with ellipses the requirement that pilots on military leave be
"current and qualified" in order to bid on trips. *Compare* Def's br. at 14 *with* 2003 CBA
§ 11.E.11.b. American does not explain what "current and qualified" means, or whether such a
bidding requirement is imposed on pilots taking other forms of comparable leave.

which would entitle him to relief "); *Mills*, 851 F. Supp. at 806.

      C.      <u>Plaintiffs Have Stated A Cognizable Claim Under USERRA Challenging Defendant's Leave Accrual Policies</u>

In addition to their trip-bidding claim, plaintiffs have alleged that, while on military leave, American denied them accrued vacation and sick time, which American provides to pilots on comparable forms of leave such as paid sick leave, union duty leave, and jury duty leave. *See* Comp. ¶¶ 12-14. This allegation states a cognizable claim under USERRA because, for leave accrual purposes, employees on military leave "must be given *the most favorable treatment accorded to any comparable form of leave* . . . ." 20 C.F.R. § 1002.150(b) (emphasis added).[21] Whether two types of leave are comparable for purposes of USERRA hinges upon a number of factors, including "the duration of the absences . . . the purpose of the leave and the ability of the employee to chose when to take the leave . . . ." *Id.* In other words, whether a particular form of leave is "comparable" to military leave for purposes of USERRA raises questions of fact that are not suitable for summary adjudication. *See Rogers*, 392 F.3d at 771-72.

Nonetheless, American asks this Court to decide, as a matter of law, on an empty record, that *only* "Leaves of Absence," as defined in the CBA, are comparable to military leave. *See, e.g.,*

---

[21]This regulation implements Section 4316 of USERRA, which provides in relevant part that "a person who is absent from a position of employment by reason of service in the uniformed service shall be . . . entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service." 38 U.S.C. § 4316(b)(1)(B). Where, as here, Congress grants "an express delegation of authority to [an] agency to elucidate a specific provision of the statute by regulation[,] [the agency's] legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843-44 (1984).

Def's br. at 2. However, as defendant concedes, "Leaves of Absence" are only *one of several* categories of leave contained in the CBA. *See id.* The CBA also provides for paid sick leave; training leave; vacation leave; jury duty leave; and union duty leave, all of which, unlike military leave, allow employees to accrue sick and vacation time. *See* Def's br. at 9-12. Plaintiffs' complaint asserts that one or more of these other forms of leave are comparable to military leave and, therefore, require that plaintiffs receive the more preferential benefits accorded to the non-military leave. *See* Comp. at ¶¶ 12-14. While defendant may disagree, this merely creates a genuine dispute that cannot be resolved on a motion to dismiss. *See Rogers*, 392 F.3d at 771-72.

There is no support for defendant's position that the CBA alone can dictate which leaves are comparable to military leave under USERRA. In fact, the *overwhelming* weight of authority holds otherwise. In *Rogers v. City of San Antonio*, under virtually indistinguishable facts, the Fifth Circuit held that a factual inquiry is necessary to determine comparability under USERRA *regardless* of how the CBA characterizes military leave. *See* 392 F.3d at 760, 771-72. The plaintiff firefighters in *Rogers* asserted that the City's CBA deprived them of bonus day and perfect attendance leave in violation of USERRA because the CBA deemed them "absent" while on military leave, rather than treating them as "constructively present." *Id.* at 760. The Fifth Circuit *reversed* the district court's summary judgment ruling, holding that "[t]here are genuinely disputable issues as to the material facts of whether involuntary non-military leaves, not generally for extended durations, for jury duty, bereavement, and line of duty injury leave . . . under which employees may accrue and receive bonus day leave and perfect attendance leave benefits, are comparable to each plaintiff's military leaves taken for service in the uniformed services." *See id.* at 771-72. In other words, the Fifth Circuit has already held that the CBA's characterization of

14

military leave *does not control* for purposes of USERRA.

The same conclusion was reached by the Third Circuit in *Waltermyer v. Aluminum Co. of America,* 804 F.2d 821, 825-26 (3d Cir. 1986). In *Waltermyer*, the CBA limited eligibility for holiday pay to individuals who worked during that week, but allowed employees to receive holiday pay if their absence resulted from reasons beyond their control, such as lay-off, jury duty, serving as a witness in court, and bereavement leave. *See id.* at 822. The Third Circuit ruled that, even though the CBA failed to allow holiday pay for absences occasioned by military leave, plaintiffs were nonetheless entitled to such pay under USERRA's predecessor statute.[22] *See id.* at 825-26. The court reasoned that the returning veterans' military leave was comparable to jury duty, during which employees were allowed to receive holiday pay. *See id.* Quoting the Supreme Court, the Third Circuit emphasized that employers and unions are not "'empowered by the use of transparent labels and definitions to deprive a veteran [or reservist] of substantial rights guaranteed by the Act.'" *Id.* at 825 (quoting *Accardi v. Pennsylvania R.R. Co.,* 383 U.S. 225, 229 (1966)); *see also Eagar v. Magma Copper Co.,* 389 U.S. 323 (1967) (reversing *per curiam* appellate judgment denying holiday pay to veterans despite CBA provision conditioning holiday pay on employees remaining continuously on payroll for the three months preceding the holiday); *Carney v. Cummins Engine Co., Inc.,* 602 F.2d 763, 765-67 (7th Cir. 1979) (refusing to enforce provisions of CBA regarding overtime that were less favorable to reservists than other employees).

_____

[22]The legislative history of USERRA and the commentary to USERRA's implementing regulations state that Congress intended to codify *Waltermyer* in section 4316 of USERRA. *See Rogers,* 392 F.3d at 769; 20 C.F.R. part 1002 (commentary at 70 Fed. Reg 75263).

15

American ignores this wealth of authority, which unequivocally holds that parties to a
CBA *are not* free to decide which non-military leaves are deemed comparable to military leave for
purposes of USERRA. American also fails to explain why no other form of leave contained in the
CBA could be viewed as comparable to military leave under the relevant USERRA test, which
examines the duration of the leave, the purpose of the absence, and the ability of the employee to
chose when to take it. *See* 20 C.F.R. § 1002.150(b). Instead, American focuses on immaterial
distinctions, such as whether the leave is paid or unpaid. *See, e.g.,* Def's br. at 9-11. However,
binding Fifth Circuit precedent rejects paid status as a factor, much less the controlling factor. *See*
*Rogers,* 392 F.3d at 767-68 ("[T]o the extent the employer policy or practice varies among various
types of non-military leaves of absence, the most favorable treatment accorded any particular
leave would also be accorded the military leave, *regardless of whether the non-military leave is*
*paid or unpaid*.") (emphasis added) (quoting USERRA House Report). When the *proper* factors
are considered, it is easy to conclude that military leave shares several relevant characteristics with
other forms of leave in American's CBA, making dismissal at this stage entirely inappropriate.
For example, jury duty is arguably comparable to military leave because both serve a public
service purpose and the employee lacks discretion regarding when the leave can be used or how
long it will last. As noted above, that was the Third Circuit's ruling in *Waltermyer, despite* the
CBA's contrary treatment of military leave.

In sum, American has fallen dismally short of establishing that plaintiffs' leave accrual
claim lacks merit or should be dismissed. Rather, this claim must proceed for an appropriate
determination as to which of the *many* forms of leave utilized by American are comparable to
plaintiffs' military leave and whether American has given its military pilots the *most favorable*

16

*treatment* accorded to other comparable forms of leave.[23] *See* 20 C.F.R. § 1002.150(b).

      D.    <u>American's Collective Bargaining/Railway Labor Act Arguments Are Irrelevant</u>

For the reasons above, there is simply no basis to dismiss any portion of plaintiffs' complaint. However, American attempts to avoid this truth by distracting the Court with page after page of argument devoted to honoring collectively bargained-for rights and avoiding RLA preemption. *See generally* Def's br. at 15-24. That is not what this case is about.

This case is simply about affording employees on military leave the most favorable treatment afforded to employees on comparable forms of leave. Plaintiffs are not asking the Court to preempt the RLA, rewrite the RLA, overrule the RLA, or set aside years of precedent regarding seniority rights or employer/union relations under the RLA. The only issue in this case is whether military leave is being treated in a manner that violates USERRA. In that regard, the terms of a CBA cannot trump USERRA's statutory requirements. *See* 38 U.S.C. § 4302 (USERRA "supersedes any . . . contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit" provided by USERRA).

In an attempt to bolster its distractive RLA contention, American cites a number of cases

---

[23]Defendant also criticizes plaintiffs' complaint for failing to (i) note that the CBA provides different benefits depending upon the length of military service; and (ii) distinguish between paid and unpaid sick leave. *See* Def's br. at. 11. Yet, defendant does not explain how this omission is fatal to plaintiffs' claims under the controlling legal test. As noted above, plaintiffs have alleged that, regardless of the length of their military service, they have been denied accrual of vacation and sick leave afforded to employees on comparable forms of non-military leave. Defendant does not dispute this. Accordingly, plaintiffs' leave accrual allegations state a cognizable claim that does not require additional facts at the pleadings stage. *See Mann,* 556 F.2d at 293 ("The plaintiff need not set forth *all* the facts upon which the claim is based; rather a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests.") (emphasis added) (citing Fed. R. Civ. P. 8(a)(2)).

17

involving the interpretation of collective bargaining agreements, none of which carries weight in the present case. For example, defendant targets *Aeronautical Indus. Dist. Lodge 727 v. Campbell*, 337 U.S. 521 (1949) as "instructive" for purposes of construing USERRA, based largely on the fact that the case mentions the reemployment provision of the Selective Training and Service Act ("STSA"), a predecessor statute to USERRA, in the context of interpreting the "seniority" provisions of a collective bargaining agreement. *See* Def.'s br. at 20-21. A careful review of the fifty-seven year-old case, however, reveals that it is inapposite.

In *Campbell*, a veteran was restored to his position with Lockheed Aircraft Corporation upon his return from military service and *subsequently* laid off while other employees occupying like positions, who had been granted seniority by virtue of the collective bargaining agreement, were retained. The critical distinction from the present controversy is that, even had the veteran in *Campbell* not served in the armed forces, and instead remained on the job, his status would have been exactly the same and he would have been laid off anyway. Indeed, the court affirmatively decided that the layoff was *completely unrelated* to the employee's military absence. *Campbell*, 337 U.S. at 524-26, 528-29.

This same dynamic holds true for the veteran/plaintiff in *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275 (1946), an even older STSA case. *See* Def's br. at 23-24. As with the plaintiff in *Campbell*, the veteran in *Fishgold* would have been laid off *regardless* of his military service. *Fishgold,* 328 U.S. at 285-86; *see also Coyne v. Westinghouse Elec. Corp.*, 204 F. Supp. 403, 405-06 (S.D. Cal. 1962) (emphasizing that in both *Campbell* and *Fishgold,* "even had the veteran . . . not been in the service but stayed on the job, his status would have been exactly the same and he would have been laid off. What the [*Campbell* and *Fishgold*] courts decided was

18

that the layoffs were unrelated to the military absence.").

By contrast, in this case, plaintiffs contend that, as a *direct result of their military service*, they received, and continue to receive, less favorable benefits than pilots on comparable forms of non-military leave. Thus, plaintiffs have alleged a straightforward violation of USERRA, which has nothing to do with the RLA or unrelated seniority rights. Should plaintiffs prevail, the only impact on the relevant CBA would be to nullify the provisions mandating less favorable benefits to pilots on military leave, and replace them with provisions providing the same benefits accorded to pilots on comparable non-military leave.[24]  Nothing else is at stake.

Finally, the mandate of section 4302 – that USERRA "supersedes" all contracts and other agreements that reduce or limit the rights or benefits provided under the statute – completely undermines American's CBA/RLA arguments. As the case law makes abundantly clear, neither employers nor unions are permitted, via the use of transparent "labels" or "definitions," to divest military employees of rights guaranteed by USERRA. *E.g., Waltermyer,* 804 F.2d at 825 (quoting *Accardi,* 383 U.S. at 229); *see also Rogers*, 392 F.3d at 767-68, 771-72.  USERRA trumps any "intricate extra-judicial mechanism" that American alleges the RLA provides to influence disputes arising out of CBAs. Def.'s br. at 15.  Indeed, legislative intent relating to USERRA bolsters plaintiffs' position, spotlighting the critical federal policy behind USERRA of protecting

---

[24]  Any such modification is actually consistent with the 1997 and 2003 CBAs, which both state that federal laws providing greater benefits to employees trump less favorable CBA provisions. *See* 1997 CBA Supp. R, Section F.5 ("Nothing in this supplemental agreement shall supersede, nullify or diminish any federal or state law that establishes a right or benefit which is more beneficial to, or is in addition to, a right or benefit provided for a pilot in this supplemental agreement."); 2003 CBA Section 11.E.11.e ("Nothing in this Section shall supersede, nullify or diminish any federal or state law that establishes a right or benefit which is more beneficial to, or is in addition to, a right or benefit provided for a pilot in this Section.").

those who serve the national defense from harm to their employment because of military service. *See, e.g.*, 38 U.S.C. 4301(a)(1) & (3); *see also Fishgold*, 328 U.S. at 284 ("He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job.").

For all of these reasons, American's CBA/RLA preemption arguments are without merit.

E. Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). Motions to strike are disfavored and rarely granted, particularly because they are often used as a dilatory tactic. *Niblo,* 821 F. Supp. at 449. A motion to strike must be denied unless the portion of the pleading sought to be struck (i) "bears no possible relation to the controversy;" and (ii) "may cause the objecting party prejudice." *OKC Corp.,* 461 F. Supp. at 550; *see also Augustus,* 306 F.2d at 868 ("'The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.'") (citations omitted); *Niblo,* 821 F. Supp. at 449 ("In order to succeed on a motion to strike . . . it must be shown that the allegations being challenged are so unrelated to . . . [the claims] as to be unworthy of consideration . . . and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party.").

Measured against this standard, defendant has offered no basis to strike any portion of plaintiffs' complaint. First, there is no basis to conclude that the 2003 CBA "bears no possible relation to the controversy." *OKC Corp.,* 461 F. Supp. at 550. Indeed, American undermines its own position on this point by relying on the 2003 CBA throughout its motion to argue that its conduct does not violate USERRA. *See, e.g.,* Def's br. at 2, 8, 14, 15 n.2. Second, defendant

American's Motion To Strike Allegations Related To The 2003 CBA Should Be Denied

makes no allegation of prejudice, undoubtedly because no prejudice exists. *See* Def's br. at 25. According to the law in this Circuit, "when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike." *Augustus,* 306 F.2d at 868.

Apparently ignoring the legal standard governing Rule 12(f) motions, defendant instead argues that plaintiffs' allegations should be stricken simply because they are "conclusory" and "generalized." Def's br. at 25. However, under the well-established principles of notice pleading, plaintiffs need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Swierkiewicz,* 534 U.S. at 511 ("[U]nder a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case . . . ."). Plaintiffs have satisfied this burden by alleging that American's trip bidding process and leave accrual policies under *both* the 1997 *and* 2003 CBAs violate USERRA by providing pilots on military leave less favorable treatment than pilots on comparable forms of non-military leave. *See* Comp. ¶¶ 9-11. Moreover, under Rule 12(f), absent a showing of prejudice or utter irrelevance, the Fifth Circuit has directed lower courts to "leave the sufficiency of the allegations for determination on the merits." *Augustus,* 306 F.2d at 868. As noted above, defendant has neither alleged nor made such a showing. Accordingly, defendant's motion to strike is baseless.

IV.    CONCLUSION

Defendant's motion to dismiss or, in the alternative, to strike, is without merit.  Plaintiffs

respectfully request that the Court deny American's motion in its entirety.


Dated: June 12, 2006                 Respectfully submitted,
                                     WAN J. KIM
                                     Assistant Attorney General
                                     Civil Rights Division

                                     DAVID J. PALMER (DC Bar No. 417834)
                                     Chief

         BY:

                                     _Esther H. Tamburo_____
                                     Christine M. Roth (DC Bar No. 464815)
                                     Deputy Chief
                                     John P. Cunningham (VA Bar No. 43973)
                                     Trial Attorney
                                     Esther G. Tamburo (DC Bar No. 461316)
                                     Trial Attorney
                                     Andrew Braniff (IN Bar No. 23430-71)
                                     Trial Attorney
                                     U.S. Department of Justice
                                     Civil Rights Division
                                     Employment Litigation Section
                                     950 Pennsylvania Avenue, NW
                                     Patrick Henry Building, Room 4036
                                     Washington, DC  20530
                                     Telephone:  (202) 514-3831
                                     Facsimile:   (202) 514-1005

                                     *Attorneys for Plaintiffs*

22

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June 2006, the foregoing **Opposition to Defendant's Motion for Dismissal of Plaintiffs' Complaint, and, Alternatively, to Strike,** was served, via electronic mail and first class mail, postage prepaid, on the following:

> Ralph I. Miller
> Michelle Hartmann
> Weil, Gotshal & Manges LLP
> 200 Crescent Court, Suite 300
> Dallas, TX 75201
> Telephone: (214) 746-7700
> Facsimile: (214) 746-7777

Esther G. Tamburo
*Attorney for Plaintiffs*