

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK WOODALL,<br>MICHAEL P. MCMAHON,<br>PAUL J. MADSON,<br>Individually and on behalf of a class of<br>all similarly situated persons,<br><br>        Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>        Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>3-06-CV-0072-M |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Dismissal of Plaintiffs' Complaint, and, Alternatively, to Strike, filed on April 2, 2006. The Court finds that Plaintiffs have properly stated claims for damages related to the accrual of sick and vacation leave, but have not met their pleading burden with respect to claims concerning trip bidding procedures. As described below, Defendant's Motion to Dismiss and, Alternatively, to Strike are DENIED. Plaintiffs are granted leave to amend their Complaint concerning trip bidding so as to bring them in compliance with the pleading requirements of Fed. R. Civ. P. 8(a)(2).

Background

Plaintiff Mark Woodall is a pilot for American Airlines. He joined American directly from active duty as a pilot in the United States Navy. He is currently a Captain in the United States Naval Reserve. From June 9, 2001 until June 24, 2001, Woodall took sixteen days of military leave for annual reserve training with the Naval Reserve.

1

Plaintiff Michael McMahon was a pilot for American from 1998 to 2005, when McMahon was recalled to full-time active duty in the Naval Reserve. McMahon served as a Captain from 1998 to 2005, and currently serves as a Commander. From February 4, 2001 to February 17, 2001, McMahon took fourteen days of military leave for annual reserve training with the Naval Reserve.

Plaintiff Paul Madson has been a pilot for American since 1989. He joined American directly from active duty as a pilot with the United States Air Force. Madson was on military leave for twenty days from December 1 through December 21, 2002, during which time he was deployed to Turkey for Operation Northern Watch. Madson returned to American and completed his full-time flying schedule for American in the month of December 2002, from December 22–31.

American placed Woodall, McMahon, Madson and every other American pilot who took military leave after January 2001 on "leave of absence" status pursuant to the 1997 Collective Bargaining Agreement ("CBA") that was negotiated by American and the Allied Pilots Association ("the Association"), which represented American's pilots. The CBA provides that pilots who are "in service" may bid on flight schedules for the upcoming month based on their seniority status. The CBA also provides that earned vacation time for pilots is calculated based on the pilots' accumulated service time with American, as well as the pilots' service time during the previous calendar year. Under the 1997 CBA, a pilot on leave of absence due to military service does not accrue vacation and sick leave, and a pilot who has not returned from military leave before the close of trip selection cannot bid for flight schedules for the upcoming scheduling period. The 1997 CBA also provides for circumstances when a pilot who is not

available for flying duties due to certain circumstances is nevertheless entitled to accrual of benefits. These circumstances include absences within accrued sick leave, participation in American training programs, authorized vacation, and jury duty. Military service is not such a circumstance. Def.'s App. at 32.

In 2003, a new CBA, superseding the 1997 CBA, was negotiated by American and the Association. Under the 2003 CBA, pilots on military leave are still placed on leave of absence status, in contrast to those pilots relieved of flying duties due to the enumerated circumstances. However, under the 2003 CBA, "current and qualified" pilots who will be "available on the first day of the next contractual month" may participate in the flight bidding process even if they have not returned from military leave before the close of the bidding process. Def.'s App. at 371.

Woodall, McMahon and Madson seek injunctive and declaratory relief on behalf of themselves and all similarly situated persons for alleged violations by American of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 et seq. ("USERRA"). Plaintiffs seek all the employment benefits allegedly denied them, including lost pay due to the inability to bid on flights (the "Trip Bidding Claim"), and lost earned vacation time and lost earned sick leave (the "Vacation and Sick Leave Accrual Claim").

American's Motion to Dismiss or, Alternative Motion to Strike, asserts that Plaintiffs have failed to state a claim upon which relief may be granted. American contends that Plaintiffs' claims flatly contradict the documents upon which the claims are based. Alternatively, American argues that any claims under the 2003 CBA should be stricken as immaterial and impertinent, as Plaintiffs have failed to allege any damages sustained, or anticipated, as a result of the 2003 CBA.

3

## Standard of Review

### I. Failure to State a Claim for Relief

A motion filed under Fed. R. Civ. P. 12(b)(6) should be granted only if the nonmovant can prove no set of facts in support of his claims that would entitle him to relief. *Guenther v. Cadle Co.*, No. 03-CV-3009, 2004 WL 1238194 at *2 (N.D. Tex. June 3, 2004) (Fish, C.J.) (citing *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). Although the Court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovant, conclusory allegations and unwarranted factual deductions will not defeat a motion to dismiss. *Id.*

An example of a claim upon which relief cannot be granted is a moot claim. Pursuant to Article III of the United States Constitution, the jurisdiction of federal courts is limited to "cases and controversies." *Clark v. Bowles*, No. 3:02-CV-2057-M, 2003 WL 21500425, *2 (N.D. Tex. Apr. 22, 2003) (Lynn, J.) (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)). "A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome of the proceedings." *Id.* at *2 (citing *Geraghty*, 445 U.S. at 396). In the context of a class action, the named plaintiffs' individual claims "must be live both at the time the class action complaint is filed and at the time of class certification." *Dallas Gay Alliance v. Dallas County Hospital Dist.*, 719 F. Supp. 1380, 1384-85 (N.D. Tex. 1989) (Sanders, J.) (citing *Geraghty*, 445 U.S. at 418 n.12).

### II. Motion to Strike

Pursuant to Fed. R. Civ. P. 12(f), "upon motion made by a party...or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions under Rule 12(f) are "viewed

4

with disfavor and are infrequently granted." *F.D.I.C. v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993) (Cummings, J.) (citing *Augustus v. Board of Public Instruction of Escambia County, Florida*, 306 F.2d 862, 868 (5th Cir. 1962). To succeed on a motion to strike, the movant must show that "the allegations being challenged are so unrelated to [the non-movant's] claims as to be unworthy of any consideration as a defense and that their presence in the pleading...will be prejudicial to the moving party." *Id.* (citing *Augustus*, 306 F.2d at 868). "The Court must deny a motion to strike if there is any question of fact or law." *Id.* (citing *Augustus*, 306 F.2d at 868).

*III. Class Actions Brought Under 23(b)(2)*

Fed. R. Civ. P. 23(b)(2) provides that a class may be certified when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Certification of a class is only appropriate under Fed. R. Civ. P. 23(b)(2) if class members will benefit from the injunctive relief they request. Monetary relief may be asserted under 23(b)(2) so long as it is "incidental," meaning that such relief is computable "by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir. 2004) (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998). The monetary relief "must flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." *Id.* (citing *Allison*, 151 F.3d at 415).

Analysis

*I. Failure to State a Claim for Relief*

Plaintiffs first argue that American violated and continues to violate USERRA because both the 1997 CBA and the 2003 CBA (collectively, the "CBAs") deny pilots on military leave the right to bid on flight schedules, thereby denying them appropriate seniority status (the "Trip Bidding Claim"). Second, Plaintiffs argue that American violated and continues to violate USERRA because Plaintiffs were, and continue to be, denied their rights to accrue non-seniority benefits, such as vacation time and sick leave, while pilots on non-military leave are permitted to accrue such benefits (the "Vacation and Sick Leave Accrual Claim").

In response to the Trip Bidding Claim, American asserts that the 2003 CBA renders moot any claim and request for injunctive relief, as the 2003 CBA changes the trip bidding process under the 1997 CBA, under which at least one Plaintiff has allegedly suffered damages. Second, American argues that the terms of the CBAs distinguish between military leaves of absence and non-military leaves, and that those leaves are thus not comparable.

USERRA is the most recent in a series of laws enacted to protect veterans' employment and reemployment rights. *Rogers v. City of San Antonio*, 392 F.3d 758, 762 (5th Cir. 2004).[1] Generally, to bring a claim under USERRA, a plaintiff must allege that "(1) [a] person is entitled . . . to employment or reemployment rights or benefits with respect to employment by an employer; and (2)(A) such employer has failed or refused, or is about to fail or refuse, to comply with the provisions of this chapter." 38 U.S.C. § 4322(a). Pursuant to section 4316(a) of

---

[1] The large body of case law that developed under USERRA's precursor statutes, such as the Selective Training and Service Act of 1940 and the Veterans' Reemployment Rights Act ("VRRA"), is relevant to the extent it is consistent with USERRA. *Rogers*, 392 F.3d at 762.

6

USERRA, a person who is absent from employment due to military leave:

> is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.

38 U.S.C. § 4316(a).[2] For rights determined by seniority, USERRA codifies the "escalator principle"—that is, a returning service member does not step back on the "seniority escalator" at the point he stepped off; rather, he returns "at the precise point he would have occupied had he kept his position continuously." *Rogers*, 392 F.3d at 763 (quoting *Fishgold v. Sullivan Drydock and Repair Corp.*, 328 U.S. 275, 284-85 (1946)).

In its Motion and Reply, American repeats its contention that Plaintiffs have failed to state a claim upon which relief may be granted because both the 1997 CBA and the 2003 CBA clearly delineate different types of leave. American argues that military leave that falls under the "leave of absence" umbrella is not comparable to other types of leave (e.g., sick leave) that fall within the ambit of "relieved of flying duties." American points to a number of ways in which leave for military duty differs from leave during which pilots continue to accrue benefits. For example, a pilot who is relieved of flying duties for the purpose of participating in union activities continues to accrue vacation benefits. The union must reimburse American for that pilot's salary, etc. during his absence. American urges the Court to follow settled law under the Railway Labor Act, 45 U.S.C. § 181, which provides that courts are not to disturb the terms of a collectively bargained labor agreement.

USERRA does not supersede any federal or state law, contract, agreement, or plan "that

---

[2] Section 4303(12) of USERRA defines "seniority" as "longevity in employment together with any benefits of employment which accrue with, or are determined by, longevity in employment."

7

establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter." Section 4302(b). However, if Plaintiffs successfully demonstrate that, labels and titles assigned to various types of leave within the CBAs notwithstanding, the 1997 CBA and/or the 2003 CBA deny Plaintiffs rights assured to them under USERRA, then USERRA *does* and *will* supersede that CBA(s).

American further urges that Plaintiffs have failed to state a claim for monetary compensation for alleged violations of USERRA stemming from the 1997 CBA's trip bidding provisions. In their Complaint at ¶41, Plaintiffs pray for "pay lost due to the inability to bid on flights commensurate with [Plaintiffs'] levels of seniority." In the Court's view, this is a sufficiently clear statement that Plaintiffs intend to pursue monetary damages, as well as injunctive relief. However, it is the Court's view that Plaintiffs have failed to state a factual basis on which to seek prospective injunctive relief with respect to the 2003 CBA's trip bidding procedures. Plaintiffs bring their claims pursuant to Fed. R. Civ. P. 23(b)(2), and monetary relief under Rule 23(b)(2) may only be incidental to the injunctive or declaratory relief requested. Thus, without pleading properly a claim for injunctive relief under Rule 23(b)(2), Plaintiffs' claim for monetary relief is deficient. Since the 2003 CBA provides for trip bidding by a pilot on military leave who will return to service at the beginning of the following month, it is not clear what injunctive relief Plaintiffs are seeking.

Pursuant to Fed. R. Civ. P. 8(a)(2), Plaintiffs need only provide American with a short and plain statement of their claims. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). That the CBAs attach different labels to different types of leave does not, as American urges, mean that Plaintiffs have failed to state a claim upon which relief may be granted. It is the

Court's understanding that the 2003 CBA does not modify the provisions of the 1997 CBA concerning sick leave and vacation accrual, under which Plaintiffs claim to have suffered damages. Though Plaintiffs have failed to do so with respect to the remedies sought by the Trip Bidding Claim, Plaintiffs have sufficiently pled their Vacation and Sick Leave Accrual Claim, with respect to both the 1997 and 2003 CBAs.

## VI. CONCLUSION

As to Plaintiffs' Vacation and Sick Leave Accrual Claim, American's Motion to Dismiss is **DENIED**. Plaintiffs have until October 30, 2006 to amend their Trip Bidding Claim, properly to state a claim for injunctive relief, or to seek monetary damages via an avenue that does not require that Plaintiffs' claim for monetary relief be incidental to a claim for injunctive relief, as is required by Rule 23(b)(2). Failure to so amend will result in the dismissal of Plaintiffs' Trip Bidding Claim. All other relief not expressly granted herein is **DENIED**.

**SO ORDERED.**

**DATED:** October 6, 2006.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

9