IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARK WOODALL,
MICHAEL P. MCMAHON,
PAUL J. MADSON,
Individually and on behalf of a class of all
similarly situated persons,

            Plaintiffs,

v.

AMERICAN AIRLINES, INC.,

            Defendant.

Civil Action No. 3:06-CV-0072-M
**ECF**
Judge Barbara M.G. Lynn

---

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## JOINT MOTION FOR CONDITIONAL CERTIFICATION OF THE
## SETTLEMENT CLASS, PRELIMINARY APPROVAL OF THE SETTLEMENT
## AGREEMENT, AND APPROVAL OF THE FORMS OF CLASS NOTICE

Respectfully submitted,

GRACE CHUNG BECKER
Acting Assistant Attorney General
Civil Rights Division

John M. Gadzichowski, Acting Chief (WI Bar No. 1014294)
Esther G. Lander, Acting Deputy Chief (DC Bar No. 461316)
John P. Cunningham, Trial Attorney (VA Bar No. 43973)
Andrew Braniff, Trial Attorney (IN Bar No. 23430-71)
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, N.W.
Patrick Henry Building, 4th Floor
Washington, D.C.  20530
Telephone:  (202) 514-3831
Facsimile:  (202) 514-1005
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS
       FOR CERTIFICATION UNDER RULE 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Class Certification Is Appropriate under Rule 23(a) . . . . . . . . . . . . . . . . . . 6

            1.    Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
            2.    Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            3.    Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
            4.    Adequacy of Representation . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    Class Certification Is Appropriate under Rule 23(b)(2) . . . . . . . . . . . . . . 10

III.    THE AGREEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY
        APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      A.    The Agreement Was Negotiated at Arms Length . . . . . . . . . . . . . . . . . . . . 14

      B.    The Agreement's Terms Are Not Obviously Deficient . . . . . . . . . . . . . . . . 15

      C.    The Agreement's Terms Fall within the Range of Approval . . . . . . . . . . . 15

IV.    THE AGREEMENT'S NOTICE PROCEDURES SATISFY RULE 23(e) AND DUE
       PROCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**CASES:**                                               **PAGE**

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) ............................................11, 12

*Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994) .................................... 11

*In re Baldwin-United*, 105 F.R.D. 475, 485 (S.D.N.Y. 1984)...................................... 18

*Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) ............................. 10

*Camp v. Progressive Corp.*, 2004 WL 2149079 (E.D. La. 2004) ................................ 14

*In re Corrugated Container Antitrust Litigation*, 643 F.2d 195 (5th Cir. 1981) ......................... 13

*DeHoyos v. Allstate Corp.*, 2006 WL 2329417 (W.D. Tex. 2006) ............................. 13

*Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968) ........................................ 7

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .................................................... 17

*Everitt v. City of Marshall*, 703 F.2d 207 (5th Cir. 1983)............................................. 9

*Ford v. Nylcare Health Plans of Gulf Coast, Inc.*, 190 F.R.D. 422 (S.D. Tex. 1999).................. 11

*Frietsch v. Refco, Inc.*, Fed. Sec. L. Rep. *(CCH)* 98,315A (N.D. Ill. Jan. 12, 1994).................... 10

*General Telegraph Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ......................... 9

*Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973) ....................................................... 9

*In re Great So. Life Insurance Co. Sales Practices Litigation*, 192 F.R.D. 212
(N.D. Tex. 2000) ............................................................................................... 6, 7, 8

*Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ............................... 17

*Jenkins v. Raymark Industrial, Inc.*, 782 F.2d 468 (5th Cir. 1986) .............................. 9

*Lightbourn v. County of El Paso*, 118 F.3d 421 (5th Cir. 1997) ............................... 7, 9

*Montelongo v. Meese*, 803 F.2d 1341 (5th Cir. 1986) ................................................. 17

**TABLE OF AUTHORITIES (continued):**                                    **PAGE**

*In re Monumental Life Insurance Co.*, 365 F.3d 408 (5th Cir. 2004) ........................................... 12

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) .................................. 6, 7, 8

*Neff v. VIA Metropolitan Transit Authority*, 179 F.R.D. 185 (W.D. Tex. 1998) .......................... 8

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) ................................................................. 13

*Phillips v. Joint Legislative Committee on Performance and Expenditure
Review of State of Miss.*, 637 F.2d 1014 (5th Cir. 1981) ............................................................. 8

*In re Prudential Securities, Inc. Ltd. P'ships Litigation*, 163 F.R.D. 200 (S.D.N.Y.
1995) ........................................................................................................................................ 18

*Quigley v. Braniff Airways, Inc.*, 85 F.R.D. 74 (N.D. Tex. 1979) .............................................. 10

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) .................................................... 14

*Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D. Ill. 1986) .......................................................... 10

*San Antonio Hispanic Police Officers' Organization, Inc. v. City of San Antonio*,
188 F.R.D. 433 (W.D. Tex. 1999) ............................................................................................ 11

*Schroeder v. City of N.Y.*, 371 U.S. 208 (1962) ........................................................................ 17

*In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993) .................................................... 13, 14

*Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885 (5th Cir. 1987) ........................................ 6

*Stirman v. Exxon Corp.*, 280 F.3d 554 (5th Cir. 2002) .............................................................. 10

*Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007) ...................................... 13

*Vaughn v. American Honda Motor Co.*, 2007 WL 2901666 (E.D. Tex. 2007) ........................... 13

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ................................................................. 18

**STATUTES:**

Uniformed Services Employment and Reemployment Rights Act of 1994
("USERRA"), 38 U.S.C. § 4301 *et seq* .................................................................................. 2

38 U.S.C. § 4316(b)(1)(B) .................................................................................. 16

**REGULATIONS:**

20 C.F.R. § 1002.150 .................................................................................. 16

**RULES:**

Fed. R. Civ. P. 23(a)(1) .................................................................................. 6

Fed. R. Civ. P. 23(a)(2) .................................................................................. 7

Fed. R. Civ. P. 23(a)(4) .................................................................................. 9

Fed. R. Civ. P. 23(b)(2) .................................................................................. 6

Fed. R. Civ. P. 23(b)(2) .................................................................................. 11

Fed. R. Civ. P. 23(b)(2)(A) .................................................................................. 17

Fed. R. Civ. P. 23(e) .................................................................................. 13

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................. 17

Fed. R. Civ. P. 23(e)(2) .................................................................................. 13

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARK WOODALL,<br>MICHAEL P. MCMAHON,<br>PAUL J. MADSON,<br>Individually and on behalf of a class of all<br>similarly situated persons,<br><br>      Plaintiffs,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>      Defendant. | Civil Action No. 3:06-CV-0072-M<br>**ECF**<br>Judge Barbara M.G. Lynn |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
JOINT MOTION FOR CONDITIONAL CERTIFICATION OF THE
SETTLEMENT CLASS, PRELIMINARY APPROVAL OF THE SETTLEMENT
AGREEMENT, AND APPROVAL OF THE FORMS OF CLASS NOTICE**

Plaintiffs Mark Woodall, Michael P. McMahon, and Paul J. Madson ("Plaintiffs"), on

behalf of themselves and the members of the putative class, submit this memorandum in support

of the parties' Joint Motion for Certification of the Settlement Class, Preliminary Approval of the

Settlement Agreement, and Approval of the Forms of Class Notice (the "Motion"). In the

Motion, the parties respectfully request that the Court:

    (1)    Conditionally certify, for settlement purposes only, the Settlement Class
and Settlement Sub-Classes pursuant to Rules 23(a) and 23(b)(2) of the
Federal Rules of Civil Procedure (the "Rules");

    (2)    Provisionally designate plaintiffs Woodall, Madson, and McMahon as
representatives of the Settlement Class;

    (3)    Provisionally designate plaintiffs Woodall and McMahon as
representatives of the Vacation Accrual Sub-Class;

(4)     Provisionally designate Woodall as the representative for the Sick Leave Accrual Sub-Class;

(5)     Provisionally designate Esther G. Lander, John P. Cunningham, and Andrew Braniff of the Civil Rights Division of the U.S. Department of Justice, as counsel for the Settlement Class;

(6)     Preliminarily approve the Settlement Agreement;

(7)     Approve the Notice and Public Notice and order the mailing and/or publication to Settlement Class Members in accordance with the Settlement Agreement; and

(8)     Schedule a Fairness Hearing for purposes of determining whether, among other things, to finally certify the Settlement Class and Settlement Sub-Classes and finally approve the Settlement Agreement.

## I. INTRODUCTION

On January 12, 2006, Plaintiffs filed a class action complaint alleging that Defendant American Airlines, Inc. ("American") violated the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 *et seq.* Plaintiffs' complaint was amended in October 2006 and January 2007. The Second Amended Complaint (the "Complaint") raises three claims. *See* Complaint at ¶¶ 8-32 (Dkt. No. 25). First, Plaintiffs allege that American violated USERRA by not permitting pilots absent for military service to accrue vacation benefits to the same extent as pilots on comparable forms of non-military leave (the "Vacation Accrual Claim"). *See id.* at ¶¶ 12-14, 16-19, 21-24. Second, Plaintiffs allege that American violated USERRA by not permitting pilots absent for military service to accrue sick leave benefits to the same extent as pilots on comparable forms of non-military leave (the "Sick Leave Accrual Claim"). *See id.* at ¶¶ 13-14, 26-32. Third, Plaintiffs allege that American violated USERRA by not permitting pilots on military leave to bid on flights to the same extent

2

as pilots who took comparable forms of non-military leave (the "Trip Bidding Claim). *See id.* at ¶¶ 13-14, 26-32. The Complaint also seeks class certification pursuant to Rules 23(a) and (b)(2). *See id.* at ¶¶ 33-35.

American answered the Complaint in February 2007. *See* Answer and Affirmative Defenses to Plaintiffs' Second Amended Purported Class Action Complaint ("American's Answer") (Dkt. No. 29). In its Answer, American denied that it violated USERRA, raised a number of defenses and submitted that this case was not suitable for class treatment. *See* American's Answer at pp. 2-10.

Commencing in the fall of 2006, Plaintiffs and American engaged in extensive settlement negotiations. During these negotiations, voluminous documents were exchanged, including data compilations, absentee records, flight records, pay records, leave records and other materials relevant to Plaintiffs' claims and American's defenses. In addition, both parties retained consulting experts to provide in-depth analyses of the exchanged information. This allowed the parties to reliably assess the merits of the other's position, culminating in an executed settlement agreement, attached hereto (the "Agreement"). The Agreement resolves both Plaintiffs' Vacation Accrual and Sick Leave Accrual claims on a class-wide basis. As to Plaintiffs' Trip Bidding Claim, the parties have reached a separate settlement agreement with Plaintiff Paul Madson, the only named plaintiff to assert this claim.[1] Accordingly, if the Court certifies the class and approves the parties' settlement, this case will be fully and finally resolved.

---

[1] As explained in Plaintiffs' April 16, 2008 letter to the Court (Dkt. No. 43), the parties have included dismissal of Plaintiff Madson's trip bidding claim in the Proposed Final Order, which is attached to the Agreement at Exhibit 4.

3

For purposes of settlement only, the parties are asking the Court to certify a class

consisting of all pilots who are or were employed by American for any length of time from

January 1, 2001 through February 29, 2008 and who have taken, were eligible to take, or may

take a military leave of absence due to service in the United States Uniformed Services (the

"Settlement Class").  There are over 350 members in the proposed Settlement Class.  The parties

are also seeking certification of two sub-classes:  one sub-class for those pilots who will receive

incidental remedial relief under Plaintiffs' Vacation Accrual Claim (the "Vacation Accrual Sub-

Class"); and another sub-class for those pilots who will receive incidental remedial relief under

Plaintiffs' Sick Leave Accrual Claim (the "Sick Leave Accrual Sub-Class").  There are

approximately 350 and 250 pilots, respectively, in each of these sub-classes.

The Agreement provides substantial benefits to Settlement Class and Sub-Class

Members.  First, American has agreed to modify its existing policies and procedures to ensure

that all Settlement Class Members who take a military leave of 16 consecutive days or less (a

"Qualified Leave") will continue to accrue vacation and sick leave benefits.  Second, upon

execution of the Agreement and during the three-year injunctive period, American has agreed not

to establish or adopt any agreement, practice, order, or policy unless it ensures that all pilots who

are in the Uniformed Services and who take a Qualified Leave are provided all vacation and sick

leave benefits that would be afforded such pilots if they were not absent for a Qualified Leave.

Third, American has agreed to provide sick leave credits and make monetary payments

totaling $345,772.80 as remedial compensation for alleged wrongfully reduced leave.

Specifically, members of the Vacation Accrual Sub-Class will receive remedial compensation

4

based on the type of flight status held, and the language of the collective bargaining agreement in effect when the class member took a Qualified Leave and subsequently had their vacation accrual reduced as a result. The compensation will also be based on the class member's highest rate of pay for the year in which his or her vacation accrual was reduced.

For the Sick Leave Accrual Sub-Class, American has agreed to credit those pilots with sick leave equal to the maximum number of sick leave hours that each would have accrued under American's then-existing policies and procedures had the pilot not taken the Qualified Leave. American has also agreed to compensate all Sick-Leave Accrual Sub-Class Members who subsequently expended all available sick leave during the Settlement Class Period at the rate of 3.25 hours per lost day of sick leave. This compensation will also be based on the class member's highest rate of pay for the year in which his or her sick leave accrual was reduced. Finally, American has agreed to pay interest on all remunerative payments at the rate of 4.3 percent compounded annually through February 29, 2008.

As explained in detail below, class certification of the Settlement Class and Sub-Classes is appropriate under Rules 23(a) and (b)(2). Furthermore, the terms of settlement are both fair and reasonable, thereby warranting preliminary approval of the Agreement and the issuance of notice.

## II. THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION UNDER RULE 23

In order to certify a class, the proposed class must satisfy the four requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation. In addition, the class allegations must comport with one of the subdivisions of Rule 23(b). *In re Great So. Life*

*Ins. Co. Sales Practices Litig.*, 192 F.R.D. 212, 214-15 (N.D. Tex. 2000) (citing *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 891 (5th Cir. 1987)). Here, Plaintiffs seek certification pursuant to subdivision 23(b)(2), which requires proof that a defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). As explained below, the proposed settlement class satisfies both Rules 23(a) and (b)(2).

### A.   Class Certification Is Appropriate under Rule 23(a)

#### 1.   Numerosity

Rule 23(a)(1) states that a class must be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Factors courts consider include (i) the number of potential class members; (ii) the potential value of each claim; (iii) the difficulties of bringing individual suits; and (iv) other factors making the joinder of claims impracticable. *See, e.g., In re Great So. Life Ins. Co.*, 192 F.R.D. at 215. While Rule 23(a) imposes no absolute minimum on the number of members necessary to form a class, the Fifth Circuit has held that 100 to 150 falls within the "range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). In addition, courts within this district have focused on whether the class action device provides a superior mechanism for claimants to obtain redress for claims that otherwise might be too small to warrant individual litigation. *Id.* (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560 (2d Cir. 1968)).

Here, the proposed class satisfies the numerosity requirement. First, the class consists of over 350 current and former American pilots, which substantially exceeds the numerical range

deemed acceptable by the Fifth Circuit.[2]  Second, the value of each claim is relatively small,

often amounting to compensation or credit for only one or two vacation or sick days per pilot.

Third, since the size of each claim is relatively small, it would be difficult or impractical for

Settlement Class Members to pursue their own lawsuits.  Finally, the class action device is a

superior means for resolving this case because the settlement procedures will provide impacted

Settlement Class Members with notification and the opportunity to object and be heard.

### 2.    Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class."  Fed. R. Civ. P.

23(a)(2).  The parties need not demonstrate that every question of law and fact is common to the

entire class.  Rather, commonality is established where "'there is at least one issue, the resolution

of which will affect all or a significant number of the putative class members.'"  *Mullen*, 186

F.3d at 625 (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)).  Thus,

Rule 23(a)(2) is satisfied where a legal question linking the class members is substantially related

to the resolution of the litigation.  *See In re Great So. Life Ins. Co.*, 192 F.R.D. at 216.  This

requirement is "'easily met in most cases.'"  *Id.* (quoting 1 NEWBERG ON CLASS ACTIONS § 3.10

(3d ed. 1992)).

Here, all putative Settlement Class Members are pilots who are, or have been, employed

by American and who served, or may serve, in the military during their employment.  In addition,

all are linked by an overarching allegation – that American violated USERRA by denying them

vacation and/or sick leave accrual while they served in the military.  In addition, the claims of the

---

[2]  The Vacation Accrual Sub-Class includes 350 pilots.  The Sick Leave Accrual
Sub-Class includes 259 pilots.

Settlement Class Members present common questions of fact relating to American's administrative policies and procedures concerning the accrual of vacation and sick leave for pilots absent due to military service; and, common questions of law relating to whether those policies and procedures violate USERRA.

Finally, the resolution of this allegation will affect all members of the class in the same way – that is, a common set of rules will govern the accrual of vacation and sick leave depending upon the length of the absence. *See, e.g., Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185, 193 (W.D. Tex. 1998) ("As long as class members are allegedly affected by a defendant's general policy, and the general policy is the crux, or focus of the litigation, the commonality prerequisite is satisfied."). Accordingly, the commonality prerequisite of Rule 23(a) is satisfied.

### 3.    Typicality

Rule 23(a)(3) requires a showing that the claims or defenses of the representative parties are typical of the claims or defenses of the putative class. *See In re Great So. Life Ins. Co.*, 192 F.R.D. at 216. The test for typicality, like that of commonality, is not demanding. *Mullen*, 186 F.3d at 625. The claims of the class representatives need not be identical to those of the class. *See Phillips v. Joint Legislative Comm. on Performance and Expenditure Review of State of Miss.*, 637 F.2d 1014, 1024 (5th Cir. 1981). Rather, typicality requires only that the proposed representatives be part of the class, possess the same interest, and suffer the same injury as the class members. *See In re Great So. Life Ins. Co.*, 192 F.R.D. at 216 (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) and *Everitt v. City of Marshall*, 703 F.2d 207, 210 (5th Cir. 1983)). In other words, typicality is satisfied as long as the claims of the named plaintiffs are based on the same legal or remedial theory as those of the class, and there is no

conflict of interest between the class representatives and the class members. *Gonzales v.*

*Cassidy*, 474 F.2d 67, 71 n.7 (5th Cir. 1973). Even where factual differences may exist between

named plaintiffs and class members, a similarity of legal theories satisfies the typicality

requirement. *See Lightbourn*, 118 F.3d at 426.

Here, Plaintiffs and the proposed Settlement Class Members have similar, if not identical,

claims. The Plaintiffs allege that their rights under USERRA were violated because they did not

accrue vacation or sick leave while serving in the military. The proposed Settlement Class will

participate in the settlement based on the same theory. Because all proposed Settlement Class

Members possess the same interest for purposes of settlement as the Plaintiffs, and no known

conflicts exist, the requirements of typicality are satisfied. *See Gonzales*, 474 F.2d at 71 n.7.

### 4.    Adequacy of Representation

Finally, Rule 23(a)(4) requires a finding that the representative parties will fairly and

adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This inquiry involves an

assessment of both the class representatives and their counsel. *See Jenkins v. Raymark Indus.,*

*Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Generally, two elements must be satisfied. First, it must

appear that the representative party, through his or her counsel, will vigorously prosecute the

class claims. *Quigley v. Braniff Airways, Inc.*, 85 F.R.D. 74, 84 (N.D. Tex. 1979).

Second, there must be an absence of conflict or antagonism between the interests of the

named plaintiffs (in the subject matter of the litigation) and those of other members of the

proposed class. *See id.* In performing this dual analysis, courts typically consider factors such as

the enthusiasm and competence of proposed class counsel, along with the willingness and ability

of class representatives to take an active role in the litigation and protect the interests of the

9

proposed class. *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002) (citing *Berger v.*

*Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)).

In this matter, Plaintiffs' counsel, attorneys with the Civil Rights Division of the

Department of Justice, are competent and experienced litigators who have negotiated and settled

many lawsuits under USERRA. Also, because class counsel seeks no remuneration under the

terms of settlement, and all monetary payments will go to Plaintiffs and Settlement Class

Members, there can be no conflict with respect to class counsel.

As for the named Plaintiffs, they have already taken an active role in pursuing this

litigation and the parties are unaware of any conflict of interest or antagonism between them and

the proposed settlement class. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986);

*see also Frietsch v. Refco, Inc., Fed. Sec. L. Rep. (CCH)* 98,315A (N.D. Ill. Jan. 12, 1994)

("[M]ere speculation about potential antagonism between the class members is insufficient to

defeat class certification. Instead, there must be a showing of a real probability of a potential

conflict."). Plaintiffs Woodall, McMahon, and Madson will fairly and adequately represent the

interests of the Settlement Class because their claims are common to those of the Settlement

Class and they have no conflicts with the Settlement Class. Similarly, Woodall and McMahon

will fairly and adequately represent the interests of the Vacation Accrual Sub-Class, and Woodall

the Sick Leave Accrual Sub-Class, because their claims are common to Sub-Class Members'

claims, and no known conflicts exist.

### B.      Class Certification Is Appropriate under Rule 23(b)(2)

Rule 23(b)(2) provides that "[a]n action may be maintained as a class action if the

prerequisites of subdivision (a) are satisfied, and in addition . . . the [defendant] acted or refused

10

to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) is typically satisfied where a group harm or a group remedy is alleged. *Ford v. Nylcare Health Plans of the Gulf Coast, Inc.*, 190 F.R.D. 422, 427-28 (S.D. Tex. 1999) (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998)).  A group remedy is virtually always found in actions where the relief sought is primarily injunctive. *See San Antonio Hispanic Police Officers' Organization, Inc. v. City of San Antonio*, 188 F.R.D. 433, 444 (W.D. Tex. 1999) (citing *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)).

Here, Plaintiffs have brought a case under USERRA seeking broad declaratory and injunctive relief on behalf of a class. *See* Complaint at ¶¶ 37-42.  Specifically, Plaintiffs' claims are based on the theory that American acted on grounds generally applicable to the proposed class by having uniform polices and procedures that govern the accrual of vacation and sick leave.  Moreover, the terms of settlement will resolve this alleged group harm – namely, requiring American to modify its existing policies and procedures to ensure that pilots on a Qualified Leave continue to accrue vacation and sick leave benefits. *See* Agreement at ¶ 4.1 d.

While the proposed Agreement also includes monetary relief in the form of compensation or credits for reduced vacation and sick leave, the monetary sums and credits are only incidental equitable compensation, which is not incompatible with class certification pursuant to Rule 23(b)(2). *See Allison*, 151 F.3d at 411 ("[M]onetary relief may be obtained in a (b)(2) class action so long as the predominant relief sought is injunctive or declaratory.").  In *Allison*, a suit brought on behalf of African-American employees and job applicants who were seeking

11

injunctive relief, as well as compensatory and punitive damages for employment discrimination, the Fifth Circuit explained that "incidental" monetary relief means:

> damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief. . . .  Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. . . . Liability for incidental damages should not . . . entail complex individualized determinations.  Thus, incidental damages will, by definition, be more in the nature of a group remedy . . . .

*Id.* at 415; *see also In re Monumental Life Ins. Co.*, 365 F.3d 408, 419 (5th Cir. 2004) (explaining that damages that are capable of mechanical, rather than individualized, calculations may be deemed incidental under Rule 23(b)(2)).

In this case, the monetary relief being awarded to settlement Sub-Class Members is easily calculated based on the value of their reduced vacation and sick leave accrual.  Furthermore, the monetary payments flow directly from American's alleged reduction of vacation and sick leave benefits to pilots absent for military leaves, which is the precise subject of the injunctive relief set forth in the Agreement.  Moreover, the incidental monetary relief is a uniform group remedy, as the value to each class member's award is capable of computation by means of objective standards based on American's flight administration, pay, and absentee data, and not dependent on subjective difference between pilots. *See In re Monumental*, 365 F.3d at 419; *Allison*, 151 F.3d at 415.  Accordingly, all Rule 23(b)(2) requirements have been met and this matter should be certified as a class action for settlement purposes.

12

## III. THE AGREEMENT SATISFIES THE REQUIREMENTS
## FOR PRELIMINARY APPROVAL

Rule 23(e) provides that "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). If a proposed settlement would bind class members, the "the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Parker v. Anderson*, 667 F.2d 1204, 1208-09 (5th Cir. 1982).

Courts within the Fifth Circuit have adopted a two-stage approach for judicial review and approval of a proposed class action settlement. *See generally, e.g., In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993); *Vaughn v. American Honda Motor Co.*, 2007 WL 2901666 (E.D. Tex. Sep. 28, 2007); *DeHoyos v. Allstate Corp.*, 2006 WL 2329417 (W.D. Tex. June 2, 2006); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007). At the first stage – the stage currently before the Court – the judge engages in a preliminary assessment of the fairness of the proposed terms of settlement. *See, e.g., In re Shell Oil Refinery*, 155 F.R.D. at 555; *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981). In measuring fairness, courts consider whether the settlement was a product of "serious, informed, non-collusive negotiations." *In re Shell Oil Refinery*, 155 F.R.D. at 555. They also look for "obvious deficiencies," such as the unduly preferential treatment of class representatives or segments of the class; or, excessive compensation for attorneys. *See id.* Finally, the court must decide whether the settlement appears to fall within the range of possible judicial approval. *Id.*

If the preliminary fairness assessment discloses no grounds to doubt the agreement's fairness, then the court directs that notice issue to class members of a formal fairness hearing

13

under Rule 23(e), during which arguments and evidence may be presented in support of, and in opposition to, the agreement.[3] *See In re Shell Oil Refinery*, 155 F.R.D. at 555; MANUAL FOR COMPLEX LITIGATION, THIRD § 30.41 (Fed. Jud. Center 1995).

Here, the parties seek preliminary approval, which means the Court need only decide whether the Agreement is fair, *i.e.*, whether it was negotiated at arms length, has no obvious deficiencies, and falls within the range of possible approval.

### A.     The Agreement Was Negotiated at Arms Length

The Agreement is entitled to an initial finding of fairness because it is the product of an arm's length negotiation. *See Camp v. Progressive Corp.*, 2004 WL 2149079, at *7 (E.D. La. 2004) (citing 4 NEWBERG ON CLASS ACTIONS § 11:41 (4th ed. 2002)). As noted above, the parties engaged in extensive settlement negotiations throughout the litigation process for a period of ten months before executing the Agreement. During these negotiations, volumes of documents, data compilations, and scores of other materials relevant to Plaintiffs' claims and American's defenses were exchanged and examined. In addition, the parties retained consulting experts to provide in-depth analyses of the exchanged information. This wide exchange and examination of information empowered the parties to reliably assess the merits of one another's

---

[3] Following the fairness hearing, courts perform a more detailed analysis of the following six factors to decide whether a settlement should receive final approval: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See, e.g., Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

14

positions prior to entering into a settlement. Moreover, throughout the settlement process both parties were capably represented by experienced counsel.

**B.     The Agreement's Terms Are Not Obviously Deficient**

The Agreement also contains no obvious defects. Settlement Class Counsel seek no remunerative attorneys' fees as part of the Agreement, and the entire monetary relief provided by the Agreement will be paid to the Plaintiffs and Settlement Class Members or, if required, a charity benefitting wounded soldiers and their families. *See* Agreement at ¶¶ 4.2, 10.4. Further, each member of the class – whether a current or former employee – is entitled to participate in the settlement based on the same uniformly applied formula. *See id.* at ¶ 4.2. In other words, no Plaintiff or class member will receive any preferential treatment under the Agreement. Accordingly, the Agreement contains no obvious deficiencies that would preclude preliminary approval.

**C.     The Agreement's Terms Fall within the Range of Approval**

The terms of the Agreement also fall within the range of approval because, when measured against Plaintiffs' Complaint, they correspond to the allegations in this case. Specifically, for injunctive purposes, the Agreement requires that all Settlement Class Members who take a Qualified Leave (defined as sixteen (16) consecutive days or less) continue to accrue vacation and sick leave benefits, which are the same benefits Plaintiffs' Complaint alleges were unlawfully reduced. The sixteen-day breakpoint is appropriate under USERRA because it appears to be consistent with how American treats employees who take comparable forms of non-military leave. *See* 20 C.F.R. § 1002.150. Employees who take longer leaves, such as leaves that extend for months or years, will not receive relief under the Agreement because

15

American does not appear to extend vacation and sick leave benefits to its pilots on comparable long-term non-military leave. *See id.* at § 1002.150(c) ("[A]ccrual of vacation leave . . . must be provided by an employer to an employee on a military leave of absence only if the employer provides that benefit to similarly situated employees on comparable leaves of absence.").[4]

The remedial relief is also fair, reasonable, and adequate. American has agreed to provide (i) sick leave credits to currently employed members of the Sick Leave Accrual Sub-Class to restore reduced sick leave, *see* Agreement at ¶ 4.2a; (ii) monetary relief to members of the Sick Leave Accrual Sub-Class who expended all available sick leave during the class period, *see id.*; (iii) monetary relief, as described in the proposed Agreement, to members of the Vacation Accrual Sub-Class for all alleged lost vacation leave, *see id.* at ¶ 4.2b; and (iv) interest on all monetary sums at the rate of 4.3 percent (4.3%), compounded annually through February 29, 2008. *See id.* at ¶ 4.2.

In sum, because the combination of remedies includes both prospective and remedial injunctive relief, along with incidental monetary compensation for Sub-Class Members who are or were subject to the practices and policies that Plaintiffs have challenged, the Agreement is well within "the range of possible approval."

---

[4] This regulation implements Section 4316 of USERRA, which provides in relevant part that "a person who is absent from a position of employment by reason of service in the uniformed service shall be . . . entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service." 38 U.S.C. § 4316(b)(1)(B).

## IV.  THE AGREEMENT'S NOTICE PROCEDURES
## SATISFY RULE 23(e) AND DUE PROCESS

When certifying a class under Rule 23(b)(2), a court has significant discretion in

determining the method of directing "appropriate notice to the class." Fed. R. Civ. P.

23(b)(2)(A).  The reasonable notice required under Rule 23 must meet both dissemination and

content concerns.  *See* Fed. R. Civ. P. 23(e)(1)(B); *Grunin v. Int'l House of Pancakes*, 513 F.2d

114, 120 (8th Cir. 1975) ("By virtue of the fact that an action maintained under Rule 23 has res

judicata effect on all members of the class, due process requires that notice of a proposed

settlement be given to the class.") (citations omitted).

The notice process proposed in the Agreement (which contemplates providing Settlement

Class Members with public notice, and, where possible, individual notice) satisfies both the

dissemination and content requirements for notice.  First, the Agreement provides for mailing of

an individualized Notice via first-class U.S. mail to the last known address of all Settlement

Class Members.  *See* Agreement at ¶ 6.1(g); *Schroeder v. City of N.Y.*, 371 U.S. 208, 212-13

(1962) (requiring mailing of notice to class members whose addresses are known or easily

ascertainable).  This notice method alone is "appropriate" and "reasonable" under Rule

23(c)(2)(a) and 23(e)(1).  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974);

*Montelongo v. Meese*, 803 F.2d 1341, 1351 (5th Cir. 1986); *see also Schroeder*, 371 U.S. at

212-13.

Second, the Agreement provides for publication of a Public Notice on the Internet at

https://www.aapilots.com. *See* Agreement at ¶ 6.1(h).  The Public Notice will prove a useful

supplement to the individually-mailed Notice because it will be easily accessible to all of

17

American's pilots. *See Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1982) (approving plan of individual and publication notice); *In re Prudential Securities, Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210-11 (S.D.N.Y. 1995) (same).

Third, the content of the Notice is adequate under Rule 23(c)(2)(A) because it informs Settlement Class Members, in easily understandable language, about (a) the nature of the action, including the claims asserted, *see* Agreement, Ex. 1 at pp. 2-3; (b) the definition of the Settlement Class, *see id.* at p. 1; (c) the terms of the Agreement in summary, *see id.* at pp. 4-8; (d) the specific benefits being provided to the Settlement Class Members, *see id.* at pp. 5-8; (e) the nature and extent of the released claims, *see id.* at pp. 8-9; (f) the process for making an objection, *see id.* at pp. 10-12; (g) the date, time, and location of the Fairness Hearing, *see id.* at p. 10; and (h) the ramifications of not objecting to the Agreement, *see id.* at p. 11. Finally, the Notice provides a specific electronic mail inquiry address to which requests for further information may be directed to Class Counsel. *See id.* at p. 13.[5]

In summary, the Notice and Public Notice, as well as the proposed dissemination of same, satisfy the requirements of Rule 23 and due process for notifying Settlement Class Members of the conditional certification of the Settlement Class and preliminary approval of the Agreement. *See In re Baldwin-United*, 105 F.R.D. 475, 485 (S.D.N.Y. 1984) (approving notice of certification of a settlement class that described pendency of the class action, terms of the proposed settlement, status of proceedings, legal effect of the settlement, rights to opt-out or object, and the right to appear at the fairness hearing.); *see also* MANUAL FOR COMPLEX LITIG. §§

---

[5] The Public Notice is identical to the Notice, except that it does not include individual pilot information. *See* Agreement, Ex. 2.

21.31, 21.311 (4th ed. West 2004).  Accordingly, the Court should approve the Notice and Public Notice and order the dissemination of same.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Parties' Joint Motion for Conditional Certification of the Settlement Class, Preliminary Approval of the Settlement Agreement, and Approval of the Forms of Class Notice, certify a settlement class for injunctive relief and incidental monetary relief pursuant to Rule 23(b)(2), designate Plaintiffs Mark Woodall, Michael P. McMahon, and Paul J. Madson as class representatives, designate Plaintiffs McMahon and Woodall as Vacation Accrual Sub-Class representatives, designate Plaintiff Woodall as Sick Leave Accrual Sub-Class representative, appoint Plaintiffs' attorneys as counsel for the certified class, preliminarily approve the Agreement, approve the proposed Notices for distribution, and set a final fairness hearing, as the Court's calendar permits.  A proposed order is attached at Exhibit 3 of the Agreement, filed herewith.

Dated: April 17, 2008       Respectfully submitted,

GRACE CHUNG BECKER
Acting Assistant Attorney General
Civil Rights Division

John M. Gadzichowski (WI Bar No. 1014294)
Acting Chief

/s/ Esther G. Lander
Esther G. Lander (DC Bar No. 461316)
Esther.Tamburo@usdoj.gov
Acting Deputy Chief

John P. Cunningham (VA Bar No. 43973)
John.Cunningham4@usdoj.gov
Andrew Braniff (IN Bar No. 23430-71)
Andrew.Braniff@usdoj.gov
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, N.W.
Patrick Henry Building, 4th Floor
Washington, D.C. 20530
Telephone: (202) 514-3831
Facsimile: (202) 514-1005
*Attorneys for Plaintiffs*